* JOYNES,J.
I think that the court did not err in treating the whole of the fund realized under the decree of 1836 as capital. For it was expressly provided by that decree, that the appellant should invest the sums decreed to be paid to him, after deducting ‘ expenses; pay to Mrs. Tebbs for life the interest of the money so invested; and distribute the principal sum, after her death, among the parties entitled. This arrangement, though injurious to Mrs. Tebbs, may have been sanctioned by her for the benefit of her children. But whether it was or not, it was embodied in the decree to which she was a party, and which is binding upon those who claim under her.
And I think the court did not err in refusing to allow the appellant an extra commission, as compensation for his services in relation to the case of Tebbs v. Chapman. It would have been proper to assert that claim in the case of Tebbs v. Chapman, when the court was adjusting the rights of the parties in respect to the fund recovered. The facts, too, were then recent, parties now dead were then living, and the merits of the claim, depending upon the character and. value of the services, and the circumstances under which they were rendered, could have been more fully ascertained and better understood, than they can be now.
Perhaps, however, it would be going too far to hold the appellant precluded by his failure to assert this claim in that cause, because he settled no account in that cause, *378 and was not required by the decree to make a report as to the collection and investment of the fund. It is a circumstance, however, which deserves to be considered along with others which I will now advert to.
It appears from the deposition of Phillips, that the appellant contemplated the assertion of this claim soon after the decree of 1836, and took steps to collect the ^'opinions of gentlemen who had been counsel in Tebbs v. Chapman, as to the commission which ought to be allowed him. He obtained a letter from one gentleman, and made an effort to get one from another, the result of which does not appear ; and whilst it appears that the letter which he did get was lost, it does not appear that another was obtained to supply its place. But it does not appear that anything else was done. It does not appear that the claim was presented to the parties, and, if presented, it was certainly not allowed ; nor does it appear that the appellant entered any charge for these services in his accounts. The first time we hear of the claim again is in 1854, when it is advanced by the appellant in his answer in this cause. These circumstances, of themselves, afford strong ground for ■ the presumption, that this claim was abandoned by the appellant ; and other circumstances greatly increase the force of this presumption. The appellant was himself a party interested in the fund. to be recovered in Tebbs v. Chapman. It does not appear that his services in reference to that case were rendered-upon any promise of compensation by the other parties. It must be supposed that his actual expenses out of pocket were retained, as he had a right under the decree to retain them. The other parties were his mother, brothers and sisters, to whom he might have been willing to render a gratuitous service, or, at any rate, to surrender his claim, in consideration of the sacrifices to which they had been subjected by the compromise, and especially as his sevice's, however great and however meritorious, had proved, by the result, to be in' a great measure fruitless. But however all this may have been, which it may now be impossible to ascertain, we can see, in these various circumstances, abundant reasons why the appellant may have been willing to abandon his claim against the other ^members of his family, on account of services rendered for the common benefit.
The main ground of objection to the decree is, that it admits the representatives of the children of Mrs. Tebbs, who died in her lifetime, to a participation, along with those who survived her, in the two-thirds of the fund which accrued from the deaths of William and John Carr.
The fund in controversy arose under the residuary clause of the will of William Carr, the elder, deceased. By that clause, the property embraced in it was, upon his sons’ attaining full age, to be divided equally between the testator’s three children, Betsey Tebbs, William Carr and John Carr, “that each child may know their part.’’ But the will directed that the principal should be retained by the trustees, to whom the residuum had been given, or laid out in land and negroes, “to the use of my said children for life, and to go as the other estate devised to them.” The “other estate” here alluded to consisted of land and negroes, the latter being real estate as the law then was, and was devised by three several clauses in preceding parts of the will, which, omitting the description of the property, are respectively in the following words:
1st. “I say I give the above recited land and negroes to my said daughter Bet-sey Tebbs during her natural life, and then to her child or children, if any living at her death, to be equally divided; if none, then to my sons William and John for life, then to be equally divided between them and their children.” * * *
2d. “I say I give the aforesaid land and negroes to my dear son William Carr during his natural life, and after his decease to his child or children; if none, to my son John Carr and my daughter Betsey Tebbs for life, and then to be equally divided amongst their children.” * *
*3d. “I say I give the above related lands and negroes to my son John Carr during his natural life, and then to his child or children, if any living at his death; if none, to my daughter Betsey Tebbs and my son William Carr during life, and then to their children to be equally divided. ’ ’
The rights of the parties in this case de-^ pend therefore on the proper construction' of these clauses. And nothing turns upon the character of the residuary fund, as real or personal, if that would make any difference in the construction, because by the express terms of the residuary clause, all the property embraced by it, real and personal, is “to go as the other estate,” which was devised by the clauses just quoted.
At the date of the will Betsey Tebbs was married and had children. William Carr survived the testator, and died in 1801, never having had a child. John Carr died in 1808, never having had a child. Betsey Tebbs died in 1852, leaving the appellant S. J. Tebbs, and two other children surviving her, and having had four other children who died in her lifetime.
It was contended on behalf of the appellant S. J. Tebbs, by one of his counsel, that upon the death of John Carr the moiety of William’s original share, which, on his death, passed to John under the will, was undisposed of and passed as property of the testator, in respect to which he had died intestate, the real estate to the heirs at law of the testator, and the personal estate to his distributees, because the latter being part of the residuum, would not fall into the residuum, as decided in Rrazier v. Rrazier’s ex’or, 2 Leigh 642. Hollowing out this theory the' counsel presented a statement of the distribution of the fund in controversy, showing that after the death of John Carr, *379 one-tíiird of the fund was held by Mrs. Tebbs for life, remainder to *ber child or children living' at her death, and that the other two-thirds were held by her absolutely. These last were claimed as belonging to the appellant, under the deed from Mrs. Tebbs, dated February 18th, 184S.
I do not concur in this view. I think it impossible to read this will without perceiving that it was the purpose of the testator to control the disposition of the entire property in all the events contemplated and provided for -by the will. This is apparent from the structure of the several clauses above quoted, which are identical in meaning and effect, though not identical in words, and were so regarded in the argument on both sides. And this view is confirmed by the second codicil, to which I shall allude in another connection.
I hold, therefore, that the entire property passed by the will, in all the events contemplated and provided for by it, and that there was no intestacy as to any part of it in any of those events. To effectuate this purpose cross remainders for life must be implied between Mrs. Tebbs and her brothers, subject to the limitations over to their children, the character of which will appear hereafter. Upon this subject it will be sufficient to refer to the cases collected in 2 Jarman on Wills 457-480, and 3 Lomax Digest 257-263, from which it will appear that this construction is fully authorized by the language of the will. It follows that, upon the death of John Carr, the whole of the property in question became, by virtue of the will, vested in Mrs. Tebbs for life, subject to the limitations in favor of her children.
In respect'to the original shares of Mrs. Tebbs, the language is explicit, that it shall pass upon her death to her child or children then living, if any. And accordingly it was not controverted in the argument, that this share passed to such of the children of Mrs. Tebbs as were living at her death in exclusion of the representatives *of those who died in her lifetime. But in respect to the shares which accrued to Mrs. Tebbs for life by the death of her brothers, the language is not equally explicit, the limitation being to her “children” generally, and not to such as might be living at her death.
The counsel on both sides have contended, that the construction of this clause may be ascertained by the application of certain general rules of law, which have been laid down in the construction of wills. But I do not think it necessary to consider these general rules, or their application to the present case. General rules of this sort often serve as guides for the court when none can be found in the will. Where the will affords no satisfactory clue to the intention of the testator, the court must, from the necessity of the case, resort to legal presumptions and rules of construction. But such rules yield to the intention of the testator apparent in the will, and have no application where the intention thus appears. It seems to me that the intention of the testator, in the present case, may be ascertained from the will, without any resort to technical rules.
We do not know the motives which led the testator to give the original shares of his children to such only of their children as should happen to survive them. He may have had a reason for it, good or bad, or it may have been the result of mere whim and capi-ice. But still there was a motive of some kind, and whatever it was, it must, as far as we can see, have been applicable equally to the derivative shares to accrue from the death of the testator’s other children. The testator was providing for bringing the original shares together, as any of his children should die without a child or children surviving, and it was natural that he should have the same, purpose in reference to the shares after they had been thus increased in amount and value, as he had in reference to them in *their original state. If a distinction had been intended, it would have been most natural to express it by words which would indicate clearly, that while he intended, in respect to the original shares, to exclude such of his’grandchildren as should die before their parent, he had a different intention in respect to the accrued shares.
As already alluded to the original shares are limited, in the former part of the several clauses under consideration, to the children who may be living at the death of their parents, while in the latter part, the accrued shares are limited to children, generally. But this change of phraseology does not indicate any difference of intention. The testator was, in these several clauses, making provision, in the future, for the same general class of objects (his grandchildren), with reference to the same events (the death of his own children), and he was making it out of property which he had bound up together by cross limitations, in case any of his own children should die without child or children surviving. Having in the first part of the clause, defined precisely the class of his grandchildren for which he meant to provide, out of the original share, he would naturally have in his mind the same intention in reference to what was to be added to that share, or to go along with it, under the provision in the latter part of the clause, and he might, by a very natural process, have dropped, in the latter part of the clause, the terms of description he had used in the former, without really intending any distinction. And this view is the stronger from the fact, that the expressions we are considering are in such close connection with one another, being found in the same brief clause, •and almost in the same line.
If it could be clearly shown that the word “children” is used in other parts of the will, or in any part of it, in a general sense, as comprehending all the children which *the testator’s children might at any time have, there would *380 be more foundation for an argument founded on the omission in the latter part of these clauses, of the ¡terms of description used in the-former. For it might then be said that' the testator had marked the distinction, bespeaking • of < children generallj', .when he intended to include all, and adding terms of description when he intended to include only a part. But this cannot be done. On the contrary, the. testator has, more than once, dropped the terms of description, “living at the death,” &c., when his meaning clearly embraced them. Thus, in the clause in reference to William Carr, his original share is given, after his death, to his “child or children,” in general terms, not saying, as in other clauses, “if any-living at his death.” Yet the meaning was obviously the same, and it was so regarded by this court in Smith & ux. v. Chapman &■ al., 1 Hen. & Mun. 240. We have, another instance in the second codicil, where the terms of description were dropped, though the meaning was evidently the same as if they had been added. There the testator speaks of. the contingency of all his children dying ‘-‘without issue of tjieir bodies,” in general terms, where the. meaping was “•without issue of their bodies” [children] living at their death, as was held by this court in the case just mentioned.
The streñgth of the argument on.behalf of the representatives of the deceased cbil-dren, -lies ini the .presumption, which,, it is insisted, . must- be made, that the testator intended an.equal benefit to each one of his grandchildren.. The court is., always inclined to make such,a presumption,.because it is in accordance.. with the natural affections, and. the-motives by which men are usually governed, • and is, in most cases, therefore, in accordance with the intention of the testator¡ But the will now before us affords-..conclusive - evidence that the testator did *not intend to confer an equal benefit upon each one of his grandchildren, for as to the original shares he expressly excludes such as shall happen to die before their parents. When we thus find that the motives and'-views upon -yyhich such a presumption is.founded, did not .control this testator in respect to the original shares of his own children, which wer.e certainly, to come to their children, if any, we cannot, with any propriety, suppose -that they controlled him in reference to the shares to accrue contingently upon the death of his other children. However natural and just it may be to make such *a presumption in most cases, -it cannot be made in this,. and to act upon it would only lead us away from the real intention of the testator.
I have already shown .that there is nothing in the language, of these clauses, inconsistent with the construction which restricts the word “children,” in the latter part.of them, -to children living at the death of their parent.' ■ So.far from it, the language in the latter-part of .these clauses, seems to indicate that the testator in providing for children, had reference to a class of objects who should be in existence at the death of the parent. The testator, in each clause, gives property to one of his own children for life, and then, that is, upon the death of the tenant for life, to his or her child or children, if any then living, and i'f none, to the testator’s other children for life, and then, that is,'upóla the death of said children, ‘ ‘to be equally' divided among their children.” This language' seems to contemplate the children provided for, as a class of persons to be in existence at the time of the division, so as to be able to participate in it. And it has been held that where there is no gift to the objects, except in a direction to divide the subject among them' upon the happening of -a particular event, only such can take as answer the description at the peripd of division, unless a contrary intention can be collected from the will. Leake *v. Robinson, 2 Meriv. R. 363; Jones v. Mackilwain, 1 Rus. R. 220. Vide, 2 Redfield on Wills 621.
If doubt remains as to the of the of Mrs. Tebbs who su'rvived her, to the whole fund in .controversy, it .wili be removed ' by considering the provisions of the second codicil. That codicil, according to the construction placed upou it by this court in Smith & ux. v. Chapman & al., makes a. disposition of the property which, by the will,, the testator had given to. his children for life, in the event of their all dying without leaving a child or children surviving. It was as if the testator had said:. “I have, by my will, disposed of the whole of this property in the event that my ■ children,, or any of them, should have a child or children surviving, but not having disposed .of it, or of. any part of it, in the event.that all my children should die without leaving, a child or children surviving, I now proceed to dispose of. ¡the whole of it in that event.”
If Mrs. Tebbs had survived all her children, and had died in the lifetime of the testator’s widow^' the contingency would have-happened in which the whole property was to go over, under the codicil, one-half to the widow, and the other half to Thomas Chapman and others. Yet in that case,, according to the argument of the counsel for the appellees, two-thirds of the entire property .would have been vested absolutely in the representatives of the deceased children of Mrs. Tebbs.
I am of opinion, therefore, that the children of Mrs. Tebbs who survived her were entitled to .the whole of the fund in controversy, and that the decree is consequently erroneous, and,should be reversed.
The other judges concurred in the opinion of Joynes, J. .
Decree reversed._.